## Health Examination of Prisoners.

*Prisoners — Examination for venereal disease — Police power — Act of April 26, 1921.*

1. Prisoners in penal institutions cannot object to examination and treatment for venereal diseases as provided by the Act of April 26, 1921, P. L. 299.

2. The Act of 1921 is a proper exercise of the police power of the State, with which the courts will not interfere.

Attorney-General's Department. Opinion to Dr. S. Leon Gans, Director, Division of Venereal Diseases, Department of Health.

SWOOPE, Dep. Att'y-Gen., Sept. 6, 1922.—Your letter asking for an opinion from this department as to whether or not prisoners can object to the examination and treatment for venereal diseases provided for in the Act of April 26, 1921, § 1, P. L. 299, duly received.

The 1st section of this Act of April 26, 1921, reads as follows: "That all persons who shall be convicted of crime or pending trial, and confined or imprisoned in any State, county or city penal or reformatory institution or

place of detention, shall be examined for, and, if infected, treated for, venereal diseases by the attending physician of such institution or by duly constituted health authorities or their deputies."

So far as I have been able to find, this act has not yet been construed by our courts, but the principles governing the exercise of the police power of the Commonwealth in regard to other acts passed for the protection of public health apply to this law. The Supreme Court of the United States, in the case of Lawton v. Steele, 152 U. S. 133, said that the object of police power is ". . . Universally conceded to include everything essential to the public safety, health and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the state may order the destruction of a house falling to decay or otherwise endangering the lives of passers-by; the demolition of such as are in the path of a conflagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restrictions of objectionable trades to certain localities; the compulsory vaccination of children; the confinement of the insane or those afflicted with contagious diseases; the restraint of vagrants, beggars and habitual drunkards; the suppression of obscene publications and houses of ill-fame; and the prohibition of gambling-houses and places where intoxicating liquors are sold. Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests."

The only requirement as to such acts to protect the public health is that they shall be reasonable and proper for the object aimed at. This question of the reasonableness of such an act of assembly is primarily a subject for the determination of the legislature, and the courts will not review the legislative judgment as to reasonableness except when it is manifest that the law in which the legislature has embodied its will is arbitrary or enacted in bad faith: Coppage v. Kansas, 236 U. S. 1.

It would seem that the same reasons which induced the courts to hold that the acts of assembly requiring the vaccination of school children, and adults, under certain conditions, would apply to the act as to the examination for venereal diseases. Compulsory vaccination as a means to prevent the spread of small-pox has been enforced in many states by statutes making vaccination a condition of the children's right to enter or remain in public schools: Jacobson v. Massachusetts, 197 U. S. 11.

Applying these principles to the act in question, it would seem that the prisoners must submit to any proper examination for venereal diseases that is reasonably necessary under the circumstances. Therefore, if it is necessary to insert a needle into a vein for the purpose of extracting blood therefrom, the prisoner must, under this act, submit to having the needle inserted and the blood extracted. The sole question seems to be whether such an operation and examination are reasonably necessary under the circumstances and to carry out the intention of the legislature in passing this law.

You are, therefore, advised that prisoners in penal institutions who come under the terms of the Act of April 26, 1921, P. L. 299, must submit to whatever is a reasonable and proper examination and treatment to carry out the purposes of this act of assembly.

From Guy H. Davies, Harrisburg, Pa.